Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| JOSÉ FIGUEROA PÉREZ  Recurrente  v.  DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN  Recurrido | KLRA202400019 | *REVISIÓN ADMINISTRATIVA* procedente del Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación  Caso número: B705-34333  Sobre: Clasificación de Custodia |
|---|---|---|

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# SENTENCIA

En San Juan, Puerto Rico, a 3 de abril de 2024.

Comparece por derecho propio la parte recurrente, José Figueroa Pérez, y nos solicita la revocación de la determinación emitida y notificada el 18 de diciembre de 2023 por el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación. Mediante la determinación recurrida, la agencia ratificó el nivel de custodia mediana del recurrente.

Por los fundamentos que expondremos a continuación, se confirma la determinación recurrida. Veamos.

## I

Actualmente, José Figueroa Pérez (Figueroa Pérez o recurrente) cumple una sentencia de reclusión de ciento cuarenta y nueve (149) años por un cargo de asesinato en primer grado, así como por infracciones a varios artículos de la entonces vigente Ley de Armas de Puerto Rico, Ley Núm. 404-2000, según enmendada, 25 LPRA sec. 455 *et seq.*[1] El mínimo

---
[1] Anejo 1 del expediente administrativo certificado, pág. 3.

Número Identificador

SEN2024 _____

de su sentencia la cumple el 11 de febrero de 2036 y el máximo el 11 de febrero de 2160. El recurrente extingue su sentencia en la Institución Correccional Ponce Principal en el Municipio Autónomo de Ponce.

El 18 de diciembre de 2023, el Comité de Clasificación y Tratamiento del Departamento de Corrección y Rehabilitación (Comité o recurrido) se reunió con el propósito de evaluar el nivel de custodia de Figueroa Pérez.[2] Evaluado el expediente, el Comité desglosó las siguientes determinaciones de hechos:

1. El confinado Jos[é] Figueroa P[é]rez, ingres[ó] sumariado a la [I]nstitución Bayamón 705 el día 2 de febrero de 2011, luego que el Tribunal de Justicia de Humacao emitió una *[sic]* Auto [de] Prisión Provisional, el día 29 de [d]iciembre de 2008, por resolución de prófugo y los delitos; [i]nfracción al Artículo 106 ([a]sesinato 1er grado), [i]nfracción al [A]rtículo 5.04(2cs) L.A[.][,] [p]ortación y uso de armas[,] [e] infracción al Artículo 5.15 L.A[.][,] [d]isparar o [a]puntar [a]rmas, con una fianza de 1,000,000.00 de dólares *[sic]*, hechos cometidos en el pueblo [de] Humacao el 29 de diciembre de 2009.

2. El día 28 de abril de 2009, el [T]ribunal de [J]usticia de Humacao dict[ó] [una] sentencia en ausencia en los siguientes delitos[:] [i]nfracción al [A]rtículo 106 C.P[.] ([a]sesinato [en] 1er grado)[,] 99 años, [i]nfracción al [A]rtículo 5.04 L.A[.] (2cs)[,] [p]ortación y uso de armas[,] 20 años en cada caso[,] [e] [i]nfracción al [A]rtículo 5.15 L.A[.] (disparar o apuntar armas)[,] 10 años. Total a cumplir una sentencia de 149 años *[sic]*.

3. El 18 de junio de 2013, este fue clasificado inicialmente en custodia máxima, por la naturaleza de los delitos y su sentencia alta, por lo cual también fue referido al Negociado de Rehabilitación y Tratamiento. Fue trasladado de la [I]nstitución Bayamón 705 a la [I]nstitución Guayama 296 el 10 de septiembre de 2010.

4. Este culmin[ó] las terapias de trastornos adictivos el día 10 de diciembre de 2013.

5. El 7 de agosto de 2014, a este le fue realizada una prueba de dopaje por el Departamento de Ciencias Forenses, la cual salió negativo a sustancias controladas.

6. El 29 de junio de 2017[,] este culmin[ó] las Terapias de Control de Impulsos y Manejo de Coraje.

7. El 25 de junio de 2019, este culmin[ó] [su] cuarto año de escuela superior en la [I]nstitución Guayama 296.

---

[2] *Resolución* en el apéndice del recurso. Véase, además, expediente administrativo certificado, págs. 2 y 6.

8. El 28 de junio de 2019 y el 16 de diciembre de 2021, fue referido informe *[sic]* al Negociado de Rehabilitación y Tratamiento, por lo que aún no ha sido evaluado.

9. El 17 de diciembre de 2019[,] a este se le reclasific[ó] su custodia de máxima a mediana, por este haber realizado buenos ajustes institucionales y no haber incurrido en informes o querellas disciplinarias, por lo [que] fue trasladado a la [I]nstitución Ponce Principal el día 18 de diciembre de 2019.

10. Fue asignado a realizar labores de [a]yudante de [p]lomería el día 4 de septiembre de 2020, donde al momento este posee buenas evaluaciones.

11. Se encuentra realizando estudios en el curso vocacional de Panadería y Repostería donde posee al momento buenas evaluaciones[;] complet[ó] las horas requeridas en el curso de Cocina Criolla Internacional el 2/junio/2023.

12. Cuenta con un mínimo de sentencia para el día 11 de febrero de 2036, y posee su máximo de sentencia para el día 11 de febrero de 2160[,] restándole 137 años para extinguir la misma.

13. No posee querellas hasta el momento.

14. No posee "Detainer o Warrant".

15. No tiene casos pendientes por resolver en el foro [j]udicial.

16. Se le realiz[ó] una prueba de dopaje por el Negociado de Ciencias Forenses el d[í]a 26 de agosto de 2021[,] la cual arroj[ó] negativo a sustancias controladas.[3]

Como parte de los acuerdos tomados, el Comité ratificó el nivel de custodia mediana en el que se encuentra clasificado Figueroa Pérez por los siguientes fundamentos:

El Manual de Clasificación de [C]onfinados[,] sección 7[,] establece que[,] para la evaluación de custodia[,] se tomar[á]n en consideración los delitos, sentencia, fecha prevista de excarcelación, historial delictivo y ajustes institucionales[,] entre otros aspectos. Al aplicar la [E]scala de Reclasificación de custodia[,] arroja una puntuación correspondiente a una custodia mínima. No obstante, el CCT se acoge a una modificación discrecional para un nivel más alto. Confinado cumple una sentencia de 149 años por delitos [de] [a]sesinato [en] 1er grado, [p]ortación y uso de armas[,] y [d]isparar o [a]puntar armas. Los que envuelven violencia e intimidación en contra de la integr[idad] física y emocional de un ser humano con utilización de [un] arma ilegal. Ha cumplido un tiempo de 12 años, 9 meses y 25 días. El mínimo de sentencia está pautado para el día 11/febrero/2036 y su máximo tentativamente para el día 11/febrero/2160[,] faltándole 137 años para extinguir la misma. Se encuentra en custodia mediana desde [el] día 17/diciembre/2019[,] por lo que lleva 4 años en dicha custodia. Considerando que el

---

[3] *Resolución* en el apéndice del recurso. Véase, además, expediente administrativo certificado, págs. 6-7.

proceso de rehabilitación es uno gradual y complejo, por lo que es necesario que contin[ú]e observando sus ajustes bajo medianas restricciones. Exhortamos al MPC continuar manteniendo una conducta positiva y establece *[sic]* que lo lleve a mantener sentido de responsabilidad e introspección hacia el confinamiento, conducta que refleje un verdadero cambio. Por lo que deberá continuar beneficiándose de los programas y tratamientos ofrecidos por el DCR[,] a fines de poder tener un perfil más claro sobre su personalidad y nos pueda ofrecer garantías mínimas[,][p]ara que pueda ser considerado para beneficiarse de una custodia con menores restricciones. […].[4]

Inconforme con la referida determinación, el 22 de diciembre de 2023, recibida el 12 de enero de 2024, la parte recurrente compareció ante nos mediante el recurso de epígrafe y señaló el siguiente error:

Erró el CCI, al ratificar la custodia mediana del Sr. Figueroa Pérez utilizando como único fundamento la Modificación Discrecional "Gravedad del Delito".

El 26 de febrero de 2024, la parte recurrida compareció mediante *Escrito en Cumplimiento de Orden*.

Con el beneficio de la comparecencia de las partes, así como con la copia certificada del expediente administrativo, nos disponemos a resolver el recurso que nos ocupa.

**II**

**A**

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para

---

[4] *Acuerdo del Comité de Clasificación y Tratamiento* y *Resolución* en el apéndice del recurso. Véase, además, expediente administrativo certificado, págs. 2 y 7.

derrotarlas. *Íd.*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho.

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd.* Véase, además, *Super Asphalt v. AFI y otro*, supra, pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*

Bajo este supuesto, la Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), "estableció el marco de revisión judicial de las determinaciones de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su

totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217. Nuestro Máximo Foro ha expresado que esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR*, supra, págs. 627-628; *OEG v. Martínez Giraud*, supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones

que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 11.

**B**

La Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1, establece como política pública del gobierno reglamentar las instituciones correccionales de modo que sirvan efectivamente sus propósitos y faciliten el tratamiento adecuado de su población para hacer posible la rehabilitación moral y social de estos.

Mediante la aprobación del Plan de Reorganización Núm. 2-2011, conocido como el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, 3 LPRA Ap. XVIII (Plan de Reorganización Núm. 2-2011), se decreta como política pública del Gobierno de Puerto Rico la creación de un sistema integrado de seguridad y administración correccional. 3 LPRA Ap. XVIII, Art. 2. Ello, tiene como objetivo que las funciones y deberes del Departamento de Corrección y Rehabilitación se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de las personas ciudadanas que han sido encontradas incursas en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o persona transgresora, con el fin de fomentar su reincorporación a la sociedad. Dicho Plan de Reorganización establece las funciones, facultades y deberes del Departamento de Corrección y Rehabilitación, entre las cuales se encuentran: (a) clasificación adecuada y revisión continua de la clientela conforme a los ajustes y cambios de esta; (b) estructurar la política pública correccional de acuerdo con este Plan y establecer directrices programáticas y normas para el régimen institucional. 3 LPRA Ap. XVIII, Art. 5 (a)(c).

Cónsono con el mencionado imperativo constitucional, en función de mantener un sistema correccional eficaz, y a los fines de reglamentar los asuntos relacionados con la clasificación y custodia de una persona confinada, fue aprobado el *Manual para la Clasificación de los Confinados*,

Reglamento Núm. 9151 de 22 de enero de 2020 (Manual de Clasificación o Reglamento Núm. 9151). Uno de sus propósitos es establecer un sistema organizado para ingresar, procesar y asignar a las personas confinadas a instituciones y programas de adultos del Departamento de Corrección y Rehabilitación. Parte II del Reglamento Núm. 9151, *supra*. A tales fines, se creó el Comité de Clasificación y Tratamiento que es el organismo responsable de evaluar las necesidades de seguridad y de programas de las personas confinadas sentenciadas. Sec. I del Reglamento Núm. 9151, *supra*.

Para realizar las reclasificaciones periódicas, se sigue el proceso establecido en el Manual de Clasificación. No obstante, la reevaluación de custodia no necesariamente resultará en un cambio en la clasificación de custodia o la vivienda asignada. Su función primordial es verificar la adaptación de la persona confinada y prestarle atención a cualquier situación que pueda surgir. Parte II, Sec. 7 del Reglamento Núm. 9151, *supra*. Por su parte, el nivel de custodia se determinará empíricamente a través de un instrumento de medición conocido como *Formulario de Reclasificación de Custodia* (Formulario de Reclasificación). Apéndice K del Reglamento Núm. 9151, *supra*. El Formulario de Clasificación también le provee al personal evaluador algunos criterios adicionales, discrecionales y no discrecionales, para determinar el grado de custodia que finalmente recomendará para determinado confinado o confinada. De este modo, el Departamento de Corrección y Rehabilitación procura asegurar el control y la supervisión adecuada de los miembros de la población penal, individualmente y como grupo.

La reclasificación responde al resultado de la Parte II y Parte III de la Escala de Reclasificación, es decir, al resultado de: (1) la puntuación en la evaluación de custodia; (2) las consideraciones especiales de manejo; (3) las modificaciones no discrecionales; (4) las modificaciones discrecionales para un nivel de custodia más alto; y (5) las modificaciones discrecionales para

un nivel de custodia más bajo. *Lebrón Laureano v. Depto. Corrección*, 209 DPR 489, 502 (2022).

Por otro lado, la escala de evaluación para determinar el grupo en el que se ubicará a la persona confinada está basada en criterios objetivos a los que se asigna una ponderación numérica fija. Así, mientras más alta es la puntuación en la escala, mayor es el nivel de custodia que necesita la persona confinada. *López Borges v. Adm. Corrección*, 185 DPR 603, 609 (2012). En ese sentido, los criterios objetivos que el Comité de Clasificación y Tratamiento evaluará en el proceso de reclasificación de custodia de la persona confinada serán los siguientes: (1) la gravedad de los cargos y sentencias actuales; (2) historial de delitos graves previos; (3) historial de fuga; (4) número de acciones disciplinarias; (5) acciones disciplinarias previas serias; (6) sentencias anteriores por delitos graves como adulto; (7) participación en programas y tratamiento; y (8) la edad de la persona confinada. A cada criterio descrito se le asigna una puntuación en la plantilla de evaluación que se sumará o restará, según corresponda a la experiencia delictiva de la persona confinada. El resultado de estos cómputos establece el grado de custodia que debe asignarse objetivamente a la persona evaluada. Formulario de Reclasificación de Custodia, Apéndice K del Reglamento Núm. 9151, *supra*.

En particular, cualquier modificación discrecional para niveles de custodia más bajos que se pretenda implementar por la persona evaluadora, debe estar basada en documentación escrita que evidencie ajustes adecuados de la persona confinada y que esta se ha beneficiado de los programas de tratamiento requeridos. Sección III(E), Formulario de Reclasificación de Custodia, Apéndice K del Reglamento Núm. 9151, *supra*. Por ejemplo, si la puntuación no refleja la verdadera naturaleza del crimen, el personal evaluador deberá documentar las características del delito que aparecen en la declaración de hechos que se está utilizando como fundamento para la decisión de la modificación. *Íd*. De igual forma, se podrá tomar en consideración si el historial delictivo y las circunstancias

en que la persona confinada cometió el delito, no revelan peligrosidad o habitualidad. *Íd.*

De otro lado, si el personal evaluador entiende que la puntuación subestima la gravedad del delito y pretende utilizarlo como una modificación discrecional para un nivel de custodia más alto, deberá basar su determinación en documentación escrita, proveniente de reportes disciplinarios, informes de querellas, informes de libros de novedades, documentos del expediente criminal o social y cualquier otra información o documento que evidencie ajustes o comportamientos de la persona confinada contrarios a las normas y seguridad institucional. Sección III(D), Formulario de Reclasificación de Custodia, Apéndice K del Reglamento Núm. 9151, *supra*.

Por otra parte, nuestro Tribunal Supremo ha reconocido que la determinación administrativa sobre el nivel de custodia de las personas confinadas requiere efectuar un adecuado balance de intereses. *López Borges v. Adm. Corrección*, supra; *Cruz v. Administración*, 164 DPR 341, 352 (2005). Por un lado, está el interés público de lograr la rehabilitación de la persona confinada, así como el interés en la seguridad de la institución y de la población penal. Al otro lado, está el interés de la persona confinada particular de permanecer en determinado nivel de custodia. *Íd.* El interés público en la rehabilitación de la población penal y en la seguridad institucional debe prevalecer sobre el interés particular de la persona confinada en permanecer en un nivel de custodia en específico o en determinada institución penal. *Cruz v. Administración*, supra, pág. 354.

La determinación sobre la procedencia de un cambio de custodia intima sopesar una serie de factores que requiere la pericia del Departamento de Corrección y Rehabilitación. *Cruz v. Administración*, supra, pág. 352. Recordemos que nuestro más Alto Foro ha expresado que estos reglamentos delimitan la discreción que ostenta la Administración de Corrección en relación con la clasificación de custodia de las personas confinadas. *Íd.* El nivel de custodia responde al resultado entre la

puntuación en la evaluación de custodia, las consideraciones especiales de manejo y las modificaciones discrecionales y no discrecionales, ya sea para un nivel de custodia mayor o menor. Es decir, la puntuación obtenida en la Parte II de la Escala de Reclasificación, por sí sola, no conlleva un cambio automático en la clasificación del nivel de custodia ya que procede tomar en consideración otros factores, tales como las modificaciones discrecionales. Como consecuencia, las determinaciones del Departamento de Corrección y Rehabilitación con respecto al proceso de clasificación de personas confinadas merecen particular deferencia. *Íd.*

La agencia tiene la discreción de analizar caso a caso el conglomerado de criterios que tiene a su haber para evaluar el nivel de custodia en el cual debe estar cada persona confinada, en ánimo de salvaguardar no solo su efectiva rehabilitación, sino, además, la seguridad institucional y de la población confinada. *Lebrón Laureano v. Depto. Corrección*, supra*,* pág. 513. Ahora bien, es doctrina reiterada que tomar en consideración únicamente un factor de la condena al momento de reclasificar a la persona confinada, por ejemplo, la extensión de la sentencia constituye un claro abuso de discreción por parte del Departamento de Corrección y Rehabilitación. *López Borges v. Adm. Corrección*, supra, pág. 611; *Cruz v. Administración,* supra, págs. 358-359.

Esbozada la norma jurídica, procedemos a disponer del recurso ante nos.

**III**

La contención principal del recurrente se basa en la alegada interpretación errónea de la parte recurrida sobre el Reglamento Núm. 9151, *supra*, durante el proceso de reclasificación de su custodia. Figueroa Pérez señala que el Comité incumplió con lo dispuesto en el citado reglamento, al ratificar el nivel de custodia mediana basado en la modificación discrecional arrojada por la Escala de Reclasificación, debido a la gravedad del delito. Afirma que el organismo administrativo no tomó en consideración ninguno de los ajustes positivos que contempla las

modificaciones discrecionales para niveles de custodia más bajo, los cuales se desprenden de su expediente, como lo es su excelente conducta. Plantea que la agencia tampoco consideró los años que le restan para cualificar para libertad bajo palabra.

Según la normativa antes expuesta, al evaluar la reclasificación de custodia de una persona confinada, el Comité debe considerar criterios objetivos basados en una puntuación dentro de una escala de reclasificación. Sin embargo, el Reglamento Núm. 9151, *supra*, también permite utilizar criterios subjetivos para modificar discrecionalmente el nivel de custodia arrojado por la Escala de Reclasificación y determinar un nivel de custodia más elevado. En lo aquí atinente, entre los criterios discrecionales que el personal evaluador puede considerar para niveles de custodia más alto está la gravedad del delito. Ahora bien, el Comité deberá basar su determinación en documentación escrita y documentar las características del delito que aparecen en la declaración de hechos que se está utilizando como fundamento para la decisión de la modificación.

Así como este criterio puede considerarse para imponer una custodia mayor, también pudiera servir de base para recomendar una custodia menor que la indicada por el puntaje. Visto desde esa perspectiva, el rol de este criterio no es uno punitivo, sino más bien acorde con el objetivo del organismo administrativo recurrido de promover la rehabilitación de la población correccional conforme al plan institucional que se considere necesario en virtud de las particularidades de cada caso. Además, el Manual de Clasificación provee los lineamientos a base de los cuales la severidad de un delito pudiera tomarse en consideración para imponer o ratificar una custodia mayor a la sugerida por el formulario. Cabe destacar que este solo puede constituir un criterio para imponer una custodia mayor si la puntuación subestima la gravedad del delito, entendiéndose por ello, en parte, la existencia de circunstancias que hubiesen creado "una situación de tensión en la comunidad, revistiéndose el caso de notoriedad pública y la comunidad se siente amenazada con su presencia".

En el caso de autos, la parte recurrente se encuentra en custodia mediana. Luego de evaluar el expediente del recurrente, el Comité expresó en la determinación recurrida que, al aplicar la Escala de Reclasificación de custodia, arrojaba una puntuación correspondiente a una custodia mínima. Sin embargo, el organismo administrativo hizo constar que se acogía a una modificación discrecional para un nivel más alto de custodia debido a la gravedad del delito. En cumplimiento con lo requerido por nuestro ordenamiento jurídico vigente, la agencia describió las características de los delitos cometidos por Figueroa Pérez. En específico, señaló que los delitos de asesinato en primer grado, portación y uso de armas, así como los delitos de disparar o apuntar un arma, envolvían violencia e intimidación en contra de la integridad física y emocional de un ser humano. Por otro lado, indicó que el proceso de rehabilitación era uno gradual y complejo, por lo que era necesario que el recurrente continuara observando sus ajustes bajo medianas restricciones. Resolvió que el recurrente debía continuar beneficiándose de los programas y tratamientos ofrecidos por la agencia, a fines de poder ofrecer las garantías mínimas para beneficiarse de una custodia con menores restricciones. Asimismo, evaluó la sentencia y el tiempo cumplido por Figueroa Pérez. Por igual, hizo constar el tiempo que el recurrente llevaba en custodia mediana. Utilizando lo anterior como fundamento para la aplicación de la modificación discrecional, el Comité determinó ratificar la custodia mediana del recurrente.

Según los hechos reseñados, no encontramos vestigio de arbitrariedad, ilegalidad o irrazonabilidad, en el hecho de tomar en consideración dicho criterio. Por el contrario, ello es cónsono con los criterios del propio Manual de Clasificación y del Formulario de Reclasificación contenido en el mismo. En virtud de ello, no encontramos fundamento para intervenir con la determinación recurrida. Nos explicamos.

Evaluado individualmente, sin otro contexto, el criterio de la severidad del delito pudiera constituir una forma de penalizar a la persona confinada

nuevamente por hechos por los que ya se le sentenciaron. Ahora bien, de la resolución recurrida surge que el Comité examinó varios factores como base para llegar a la determinación de mantener al recurrente en custodia mediana. Como indicamos, el organismo administrativo reconoció que la puntuación en cuestión correspondía a una custodia mínima. A pesar de ello, el Comité tomó en consideración factores discrecionales, como la gravedad del delito, para concluir que no debía reducirse el nivel de custodia. Al examinar este proceder, notamos que la determinación de la agencia fue el resultado de un análisis ponderado del nivel de rehabilitación que está experimentando el confinado y, de otra parte, la severidad del delito cometido, en comparación con el tiempo cumplido de la pena de reclusión.

Al así hacerlo, el Comité tomó en consideración que, si bien Figueroa Pérez había demostrado una buena conducta durante el cumplimiento de su sentencia, este se encuentra cumpliendo por hechos que reflejaron altos niveles de crueldad, lo cual requiere la continuación del proceso gradual de rehabilitación bajo medianas restricciones. También se ponderó el tiempo que lleva en prisión, el cual es poco en proporción a la pena impuesta. Con ello en mente, el organismo administrativo concluyó que el recurrente debía permanecer en custodia mediana y le invitó a "continuar manteniendo una conducta positiva y establece *[sic]* que lo lleve a mantener sentido de responsabilidad e introspección hacia el confinamiento, conducta que refleje un verdadero cambio".

En mérito de lo antes expuesto, sostenemos la determinación agencial recurrida. Nada en el expediente de autos sugiere que el pronunciamiento que atendemos haya resultado de un ejercicio arbitrario, ilegal o irrazonable atribuible al Departamento de Corrección y Rehabilitación. El Comité posee la facultad delegada de emplear modificaciones discrecionales, como los factores mencionados anteriormente, para imponer o mantener un nivel de custodia más alto. Por tanto, toda vez que el recurrente no derrotó la presunción de corrección de

la resolución que nos ocupa, confirmamos la determinación administrativa recurrida.

**IV**

Por los fundamentos que anteceden, confirmamos la determinación administrativa recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones